# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KEVIN H. MCKENNA, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:08-cv-253 |
| v. : | |
| : | JUDGE ALGENON L. MARBLEY |
| NESTLE PURINA PETCARE CO. : | |
| : | Magistrate Judge Kemp |
| Defendant. : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on the Defendant Nestle Purina Petcare Co.'s ("Nestle") Motion to Dismiss and Request for Attorney Fees. For the reasons set forth below, this Court **GRANTS** Defendant's Motion to Dismiss, but **DENIES** Defendant's Request for Attorney Fees.

### II. BACKGROUND

Plaintiff Kevin H. McKenna ("McKenna") was employed with Nestle between October 15, 2001 and October 14, 2004. He was terminated by Nestle for allegedly violating Nestle's Electronic Communications Policy ("ECP"). On October 28, 2005, he brought a lawsuit against Nestle titled, *Kevin H. McKenna v. Nestle Purina Petcare Co.*, Case No: C2-05-976 ("McKenna Lawsuit").

The events giving rise to this suit arise from the McKenna Lawsuit. On January 19, 2007, Nestle requested this Court take notice of a potential threat to Nancy Goss ("Goss"), a material witness to the McKenna Lawsuit. Goss is a former employee of Nestle who was terminated by Nestle on October 1, 2004 for harassing and threatening her co-workers. McKenna's complaint in the McKenna Lawsuit alleged, among other things, that he reported to Nestle that Goss had

sexually harassed him. On October 17th, 18th, and 19th, 2006, Nestle and McKenna deposed Goss. Goss's testimony revealed that she and McKenna had conducted an almost year-long sexual relationship while employed with Nestle. Additionally, Goss testified as to specific sexual acts, sexually explicit conversations, and sexually explicit emails that transpired between her and McKenna. Nestle alleged that Goss's testimony undermined McKenna's claims.

On January 14, 2007, McKenna sent Nestle's counsel an email, which discussed Goss. In this email, McKenna wrote in reference to Goss, "Do I have to KILL this BITCH to get her the fuck off of me? WTF is it you people don't understand?!?!?!?!?!?!?!?!?!?!?!?!" (McKenna email to Brian Dickerson and Jonathan R. Secrest, Jan. 14, 2007) ("Email"). Nestle asserted it could not determine the severity of this threat and whether or not it was made in jest. McKenna previously had visited Nestle's corporate offices in St. Louis, demanding to meet with certain corporate personnel, and was escorted out by security. Accordingly, Nestle asserts, it felt it had to formally inform the Court of the threat to Goss, and inform Goss as well. On January 19th, Nestle filed a Notice with the Court, which apprised the Court of the situation, and informed the Court that Goss was being served a copy of the Email. (McKenna Lawsuit, doc. no. 71).

On January 22, 2007, McKenna demanded to meet with any "Officer of this Court" to "issue a Civil Protective Order and halt Nestle's service" of the copy of the Email to Goss. (Complaint at p. 5). The Court held a status conference, in which the Court informed McKenna that it did not have the authority to issue a Civil Protective Order of the nature being requested by McKenna. Goss received the Email that same day. After receipt of the Email, Goss contacted the Muskingum County Sheriff's Department to file charges of criminal menacing against McKenna. The Sheriff's Department went to McKenna's residence and informed him it was

acting upon a complaint of criminal menacing by Goss. McKenna informed the Sheriff's Department about the events that had occurred. McKenna was not arrested at that time.

On January 23, 2007, McKenna filed an Urgent Notice to Magistrate Judge Kemp to notify Judge Kemp of the events that had transpired. McKenna requested the Court "immediately demand all pertinent information to this matter in possession and control of the Muskingum County Sheriff's Department . . . and act as these egregious acts and justice demands." (McKenna Lawsuit, doc. no. 74). McKenna also requested the Court "order default judgment in this case, and initiate federal prosecution of the Defendant/Defendant's Counsel in this matter." (*Id.*) Judge Kemp took no action in response to McKenna's Urgent Notice. On January 25th, the Muskingum County Prosecutors Office dismissed the criminal complaint filed by Goss. On January 26th, McKenna filed a Second Urgent Notice to Magistrate Judge Kemp to submit the Sheriff's Department's report on the matter. (McKenna Lawsuit, doc. no. 76). Judge Kemp took no action in response to this Second Urgent Notice.

McKenna asserts that on January 26, 2007, he sought "Professional, Medical relief of anxiety/emotional distress, inflicted upon McKenna, by actions initiated by Nestle and subsequent events, beginning at January 19, 2007." (Complaint at p. 8). McKenna asserts that his physician "concluded McKenna to be suffering from situational stress." (*Id.*) Thereby, he was prescribed an anti-depressant/anti-anxiety medication. (*Id.*) On February 12th and February 16th, McKenna's physician revised his prescription because the current prescription was not working. (*Id.* at 9). McKenna asserts that he took prescription anti-depressants/anxiety medication from January 2007 through April 2007. (*Id.*) Since April 2007, McKenna claims that he has suffered multiple symptoms of withdrawal from the anti-depressant/anxiety medication. (*Id.*)

**III. STANDARD OF REVIEW**

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 553 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). A court will grant a motion to dismiss under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.,* 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

Although liberal, this standard requires more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (internal quotations omitted)). While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).

## IV. LAW AND ANALYSIS

### A. Count One of McKenna's Complaint

In order to establish a prima facie case of retaliation, McKenna must show that: (1) he engaged in a protected activity; (2) Nestle knew that he engaged in the protected activity; (3) as a result of McKenna exercising his protected rights, Nestle took an employment action adverse to him; and (4) a causal connection exists between the protected activity and the adverse employment action. *See Fenton v. HiSAN*, 174 F.3d 827, 831 (6th Cir. 1999).

Construing McKenna's Complaint in the light most favorable to him, McKenna clearly has not alleged a prima facie case of retaliation, primarily because of his inability to establish the third prong. McKenna asserted in his Complaint that Nestle, "instigat[ed] the filing of false criminal charges against me, for my filing charges [of] unlawful discrimination (opposition) against Nestle . . ." (Complaint at p. 1). In McKenna's Response in Opposition, he again states that the adverse action he suffered was a "Criminal Complaint filed against McKenna." (Response in Opposition at p. 11). Reviewing both McKenna's Complaint and McKenna's Response in Opposition, however, reveals no allegation that Nestle ever filed criminal charges against McKenna. Rather, McKenna states, "Nancy J. Goss contacted the Muskingum County Sheriff's Department to file a criminal complaint against McKenna." (Complaint at p. 7). There is no allegation that Nestle contacted the Sheriff's Department, that Nestle told Goss to contact the Sheriff's Department, that Nestle knew Goss was contacting the Sheriff's Department, or that Nestle had any control over Goss's actions. Goss is a former employee of Nestle who was fired

by Nestle. Any actions Goss took were of Goss's own accord. The assertion that Nestle could in any way be liable for the actions of Goss is unsupportable.

Furthermore, Count One is based on the filing of "false criminal charges." (*Id.* at p. 1). There is no allegation in McKenna's Complaint that any false criminal charges were filed. McKenna asserts that the Muskingum County Prosecutor's Office determined that McKenna's actions "did not constitute an 'overt threat' by McKenna against Nancy J. Goss." (*Id.* at p. 8). The Complaint does not state, however, that the criminal charges were "false." Though ultimately non-meritorious, the charges were based on a "true" email sent by McKenna to Nestle's counsel containing threatening language concerning Goss.

McKenna has failed to allege facts to support that Nestle "instigat[ed] the filing of false criminal charges" against McKenna. The third prong of the prima facie case for retaliation has therefore not been established. Nestle's Motion to Dismiss Count One is **GRANTED**.

### B. Count Two of McKenna's Complaint

To state a claim for intentional infliction of emotional distress, McKenna must allege that: (1) Nestle intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to McKenna; (2) Nestle's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) Nestle's conduct was the proximate cause of McKenna's psychic injury; and (4) McKenna's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *See Quintile v. Medina County*, No. 1:07CV2413, 2008 WL 2484173, at *8 (N.D. Ohio June 17, 2008) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio App. 1 Dist.

1997)). With regard to the "outrageous and extreme conduct" element, the Ohio Supreme Court explained:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983) (overruled on other grounds) (internal quotation marks and citation omitted), *cited in Martin v. JBS Techs., LLC*, 443 F.Supp.2d 962, 969-70 (S.D. Ohio 2006).

McKenna asserts as the basis for his intentional infliction of emotional distress claim that Nestle informed Goss about McKenna's Email, even though Nestle was "expressly and repeatedly warned [about the harm that] could or would come to McKenna by Ms. Goss" and Nestle "caus[ed] Ms. Goss (third-party) to initiate a criminal complaint against McKenna." (Response in Opposition at p. 13). Once again, Nestle did not file any criminal charges against McKenna, Goss did. The only thing Nestle did was send Goss the Email that McKenna had sent to Nestle's counsel. If McKenna did not want this Email shared, perhaps he should not have sent it to the opposing party's counsel in the first place. Nestle had every right to communicate with one of its key witnesses about a potential threat to that witness, and there was nothing privileged or protected about that Email. It was not up to Nestle to assess this threat; that was Goss's decision. Goss knows McKenna better than Nestle and was in a better position to determine whether McKenna was actually threatening her or blowing off steam. On her own, Goss determined McKenna's

threat was legitimate and contacted the Sheriff's Department. Nothing done by Nestle was extreme or outrageous. Nestle simply provided a copy of the Email, concerning Goss, to Goss. Nestle's Motion to Dismiss Count Two is therefore **GRANTED**.

### C. Request for Attorney Fees

Nestle also requests attorney fees incurred in defending this action. Pursuant to 28 U.S.C.S. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred as a result of such conduct.

Nestle asserts that no reasonable person could find that McKenna's Complaint contains any merit. Nestle claims that the proceedings in this case were unreasonable and vexatious, and their purpose was solely to harass Nestle.

The Sixth Circuit authorized an award of attorney fees against a Title VII plaintiff in *Riddle v. Egensperger*, 266 F.3d 542 (6th Cir. 2001). The *Riddle* Court determined such an award was proper when a plaintiff's action is "frivolous, unreasonable, or without foundation." *Id.* at 557. The *Riddle* Court cautioned, however, that awarding attorney's fees to a defendant is only appropriate in "the most extreme and egregious cases of misconduct." *Id.* In this case, though this Court has found the claims to be ultimately non-meritorious, this is not the rare circumstance justifying awarding Nestle attorney's fees. Nestle's Request for Attorney Fees is therefore **DENIED**.

Nevertheless, this Court cautions that pleadings McKenna has filed in this action move dangerously close to sanctionable behavior. Being a pro se litigant is not a license for McKenna to state and do whatever he wants. There is not a different standard for Rule 11 sanctions for attorneys and non-attorneys. *Spurlock v. Demby*, No. 92-3842, 1995 WL 89003, at *2 (6th Cir.

Mar. 2, 1995). Rather, Rule 11 "speaks of attorneys and parties in a single breath and applies to them a single standard." *Id.* (quoting *Bus. Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 548 (1991). Pro se filings do not serve as an "impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Grider v. Irvin*, No. 1:06CV-53-TBR, 2007 WL 4441214, at *4 (W.D. Ky. Dec. 17, 2007) (granting Rule 11 sanction of attorney's fees against pro se plaintiffs for filing an unreasonable motion to amend judgment); *see also Cooksey v. McElroy*, No. 1:07cv581, 2008 WL 4367593, *25 (S.D. Ohio Sept. 24, 2008) (finding that it is appropriate to impose sanctions against a pro se plaintiff for his violation of Rule 11); *Kish v. U.S.*, No. 1:95:MC-109, 1996 WL 196730, *5 (W.D. Mich. Jan. 30, 1996) (granting monetary Rule 11 sanction against pro se plaintiffs).

In the McKenna Lawsuit, Judge Kemp has already specifically warned McKenna about his comments filed in pleadings. In denying Nestle's Motion for Sanctions, Judge Kemp stated:

> The Court will not award sanctions at this time. However, Mr. McKenna is advised, in the future, to be more temperate in his comments toward the conduct of opposing counsel. If he does choose to make statements impugning the honesty or integrity of such counsel and is not able to support such statements with a factual showing, sanctions may well be imposed in the future.

(McKenna Lawsuit, doc. no. 97 at pp. 5-6). In this case, in McKenna's Response in Opposition, McKenna accuses Nestle's counsel of, among other things, engaging in an "insanely 'aggressive' campaign to 'win' Case C2-05-976 by absolutely any and all means at their disposal" (Response in Opposition at p. 2); "set[ting] out on an aggressive course to obstruct any and all further discovery requests made upon Nestle" (*Id.* at p. 3); and "effectively attempt[ing] to 'assassinate' any aspect of my life within their means and reach" (*Id.* at p. 4). These comments are inappropriate and

unsupported. This serves as McKenna's final warning to temper his comments toward the conduct of opposing counsel. If McKenna continues to impugn the honesty or integrity of opposing counsel without factual support, sanctions will be imposed.

## V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant's Motion to Dismiss, but **DENIES** Defendant's Motion for Attorney Fees.

**IT IS SO ORDERED**.

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: March 24, 2009**